**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kenneth Herbert LINN, a/k/a Dennis Kenneth Long, Defendant–Appellant.**

**No. 87–3093.**

United States Court of Appeals,
Ninth Circuit.

Argued Aug. 1, 1988.

Submitted Nov. 23, 1988.

Decided July 18, 1989.

---

Robert J. Wayne, Seattle, Wash., for defendant-appellant.

Kenneth G. Bell, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

The opinion of the court, reported at 862 F.2d 735 (9th Cir.1988), as well as the order and opinion filed July 10, 1989, are withdrawn. The following opinion is filed in their place.

The petition for rehearing is denied.

On Appeal From the United States District Court for the Western District of Washington.

Before KOELSCH, ALARCON, and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Kenneth Linn, appellant, was convicted of conspiring to distribute, and of distributing, cocaine in excess of 500 grams, in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(B) (counts I and III). Appellant was also convicted of unlawful use of a communications facility, in violation of 21 U.S.C. § 843(b) (count II). Appellant received a sentence of ten years imprisonment on counts I and III, and four years on count II. The sentences run concurrently.

Linn appeals, claiming (1) illegal search and seizure of evidence from his automobile, (2) insufficient evidence on count II, (3) a right to bifurcation of guilt and forfeiture proceedings, (4) error by denial of

severance, (5) improper jury instructions, and (6) unconstitutional sentencing under 21 U.S.C. § 841(b)(1)(B).

We affirm.

FACTS

On December 3, 1986, the Royal Canadian Mounted Police (RCMP) received detailed information from a confidential informant relating to an incipient cocaine transaction. On the basis of this information, RCMP officers placed Terry Germain under surveillance. Germain was located in West Vancouver, B.C., Canada.

On December 5, 1986, Germain met appellant. Following this meeting, appellant immediately withdrew cash (in the form of cashier's checks) from two Vancouver banks and made or appeared to make, withdrawals at four other Vancouver banks. Into each bank, appellant carried a brown briefcase.

On December 8, 1986, while the RCMP kept appellant under surveillance, appellant travelled from Vancouver to Seattle. In Seattle, appellant registered at the Vance Hotel. The Drug Enforcement Administration (DEA) began surveillance of appellant.

On December 9, 1986, at approximately 6:25 p.m., a DEA agent observed appellant placing a telephone call from the Vance lobby. The agent overheard appellant inquire about the arrival of a flight due from Florida. The call lasted no more than one minute. Appellant immediately placed a second telephone call. The DEA agent overheard this second call. In it appellant informed another party that their previous arrangement was running late and that he would make contact again in one hour. The second call lasted no more than ninety seconds. Appellant promptly ascended by elevator to his hotel room. A computer record, introduced at trial, indicated that a telephone call was placed from appellant's room at the Vance to coconspirator Adler's room at the Sheraton. This call was recorded at 6:29 p.m. (Sheraton time).

At trial, a DEA agent testified that approximately three minutes passed from the time appellant left the Vance lobby until appellant entered his Vance Hotel room.

Appellant's ascent occurred between 6:25 p.m. and 6:35 p.m.

At 6:35 p.m., DEA agents observed appellant leaving the Vance Hotel. He walked to the Sheraton Hotel. He carried a brown briefcase.

At 7:30 p.m., appellant emerged from an elevator at the Sheraton. That elevator served floors twenty and above. Appellant carried the brown briefcase. Appellant entered the Sheraton lounge. Appellant was soon joined by coconspirator Adler in the lounge.

An airline ticket later recovered from Adler's hotel room indicated that Adler had, shortly before, arrived from Florida. Immediately prior to joining appellant in the Sheraton lounge, Adler placed a "bulky" manila envelope in the Sheraton hotel safety deposit box.

After sitting with Adler in the lounge for approximately ten minutes, appellant departed the Sheraton. He carried his briefcase. Appellant was promptly met by coconspirator Leo Klein, who sat waiting in a pickup truck outside the hotel. Appellant and Klein undertook activities which required attention to the seat of Klein's pickup truck. Appellant was then returned to the Vance Hotel by Klein. Adler immediately returned to his room at the Sheraton.

Klein was apprehended on December 9, 1986, heading toward Spokane, Washington. From Klein's pickup truck, two one-kilogram "bricks" of cocaine were seized. These cocaine bricks were wrapped in duct tape.

Adler was arrested on December 10, 1986. Adler's room was immediately searched pursuant to a search warrant. In Adler's room, DEA agents found a small quantity of cocaine, cocaine paraphernalia, a Sheraton safety deposit box key, $1,641 in United States currency, an airline ticket from Florida to Seattle, a professional card bearing the name "Tide Financial Investment Corporation," and receipts and check stubs for two cashier's checks drawn on Vancouver banks.

DEA agents opened the Sheraton safety deposit box. Inside, they found two cash-

ier's checks. These checks matched receipts and stubs found in Adler's room and were drawn on Canadian banks visited by appellant on December 5, 1986. The two checks were payable to the "Tide Water Financial Corporation" and totalled $14,271 (Canadian currency). DEA agents also discovered in the box a "bulky" manila envelope. The envelope contained ten smaller envelopes, totalling $45,000 cash.

Adler's fingerprints were removed from one of the cash envelopes found in the safety deposit box, as well as from the inside plastic packaging around one of the one-kilogram bricks of cocaine seized from Klein's truck, and from the duct tape surrounding the cocaine.

Appellant was arrested at 10:05 a.m. on December 10, 1986, travelling north from Seattle on Interstate 5. From appellant, DEA agents seized a small amount of cocaine, a Vance Hotel receipt, a brown briefcase, a telephone book which contained a listing for the "Tide Financial Investment Corp.," and Sheraton Hotel matchbooks.

Following the arrest of appellant and his wife (who was travelling with him), DEA agents moved appellant's vehicle from Interstate 5 to a side road. Within three hours, appellant's vehicle had been searched at DEA headquarters. A warrant was not obtained for this search.

In appellant's vehicle, agents found three rolls of tape, including at least one roll of duct tape. Laboratory tests matched the pieces of duct tape around the cocaine bricks in Klein's truck to the duct tape found in appellant's vehicle. The pieces of tape wrapped around the cocaine were torn from the roll of tape found in appellant's vehicle.

Laboratory analysis indicated that the two packages of cocaine removed from Klein's truck weighed 995.1 grams and 996.6 grams. Cocaine in both packages was 92 percent pure.

The trials of appellant and Adler were not severed.

Prior to trial, the court granted appellant's *in limine* motion to exclude reference to appellant's use of a false name.

The proscription on reference to appellant's alias was applied against the government and against Adler.

Appellant sought by pretrial motion to bifurcate the forfeiture and guilt determinations and to have the minimum mandatory sentences under 21 U.S.C. § 841(b)(1)(B), as amended by the Anti–Drug Abuse Act of 1986, declared unconstitutional. These motions were denied.

On the first day of trial, after appellant's opening statement, counsel for Adler stated: "I am going to have a motion to make. Maybe I can make it after my opening statement." The trial judge responded: "Please." At the close of that day, the still unspecified motion was put over until the second day of trial.

On the second day of trial, Linn moved to sever the trials on the ground that appellant's defense and Adler's defense were antagonistic. The court declined to grant a severance, finding that Adler's defense and appellant's defense were not mutually exclusive.

Following closing arguments, appellant proposed one jury instruction on multiple conspiracies and another on lesser included offenses. The court declined to give the requested instructions.

At the close of the government's case, appellant moved for acquittal on count II. Appellant claimed insufficient evidence had been presented to prove use of a telephone for unlawful purposes. Appellant further argued that the computer printout of the recorded telephone call was inadmissible. The court denied this motion.

Appellant was convicted of conspiring to distribute, and of distributing, cocaine in excess of 500 grams, in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(B) (counts I and III). Appellant was convicted of unlawful use of a communications facility, in violation of 21 U.S.C. § 843(b) (count II).

Appellant received concurrent ten-year terms of imprisonment on counts I and III. On count II, he received a sentence of four years, to run concurrently.

Appellant timely appeals. This court has jurisdiction under 28 U.S.C. § 1291.

## I

Appellant claims that the district court erred when it refused to suppress the duct tape found in appellant's automobile, since search and seizure of the automobile was undertaken absent a warrant and a warrant was necessary.

Appellant argues that the automobile exception to the warrant requirement, articulated in *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), does not apply. Second, appellant argues that under *United States v. Vasey*, 834 F.2d 782 (9th Cir.1987) (per curiam), the search was not "incident to arrest," since it occurred several hours after appellant was arrested. Third, he argues that probable cause did not exist to seize his car for forfeiture purposes. Finally, he asserts that the requirements of a lawful inventory search were not met. In conclusion, he claims that the search was illegal.

This court reviews de novo the legality of a search and seizure. *United States v. Jarrad*, 754 F.2d 1451, 1454 (9th Cir.), *cert. denied*, 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985). Any exception to the Fourth Amendment warrant requirement must be proven by a preponderance of evidence, and this burden is upon the government. *United States v. Jeffers*, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951); *United States v. Whitten*, 706 F.2d 1000, 1016 (9th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). The probable cause finding is reviewed de novo, *United States v. Arrellano–Rios*, 799 F.2d 520, 522 (9th Cir.1986), while findings of fact are reviewed for clear error. *United States v. Pinion*, 800 F.2d 976, 979 (9th Cir.1986).

We do not address the search incident to arrest, the inventory, or the *Ross* rationales for this warrantless search. *See Ross*, 456 U.S. at 798, 102 S.Ct. at 2157. The search was lawful because it was conducted pursuant to a forfeiture seizure for which there was probable cause. Although

the district court did not rely on this ground for admission, the issue has been fully briefed on appeal, and there is sufficient basis in the record for us to address it. *See, e.g., United States v. Click*, 807 F.2d 847, 850 n. 5 (9th Cir.1987) (appellate court may affirm correct decision of trial court in criminal case, even when that decision is based on incorrect reasoning). The forfeiture statutes require forfeiture of "any ... property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of," a drug-related felony. 21 U.S.C. § 853 (Supp. IV 1987); *see also* 21 U.S.C. § 881(a)(4) (Supp. IV 1987) (any conveyance used in any manner to facilitate sale of controlled substances).

At the time of the arrest, the DEA agents intended to seize Linn's automobile for forfeiture purposes, although their primary motivation was, of course, the arrest of Linn before he left the jurisdiction. The agents had probable cause at the time of the seizure to believe that the automobile had been used to transport funds from Canada to Seattle for a drug buy. Linn had been seen to visit six Vancouver banks immediately following his meeting with a man, Germain, reported by a reliable RCMP informant to be involved in a drug deal. Linn withdrew U.S. dollars from at least one bank. Shortly thereafter Linn traveled in his automobile to Seattle, where he met with Adler and Klein. Linn engaged in activity in Klein's truck. At the time of Linn's arrest, the DEA knew that cocaine had been discovered in Klein's truck. These facts, and the reasonable inferences to be drawn from them, created ample probable cause to believe that Linn's automobile had transported money to be used to purchase drugs.

Transportation of drug purchase money in an automobile subjects the automobile to forfeiture. *See* 21 U.S.C. § 881(a)(4); *cf. United States v. One 1970 Pontiac GTO, 2–Door Hardtop*, 529 F.2d 65 (9th Cir.1976); *Nocita v. United States*, 258 F.2d 199, 202 (9th Cir.1958). Once such property is lawfully in the government's possession, it may be searched at

any time, and evidence found in the course of the search is admissible. *United States v. Kimak,* 624 F.2d 903, 905–06 (9th Cir. 1980) (per curiam); *United States v. Johnson,* 572 F.2d 227, 230–34 (9th Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed.2d 1137 (1978); *see Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

 The warrant requirement applies to seizures for the purpose of forfeiture. *United States v. Spetz,* 721 F.2d 1457, 1469–70 (9th Cir.1983). Exigent circumstances excused the failure to obtain a warrant, however. *See Johnson,* 572 F.2d at 230 n. 5. Although the DEA knew facts giving rise to suspicion that the automobile was subject to forfeiture in enough time to seek a warrant, the agents were not required to act immediately upon the establishment of minimal probable cause. *Cf. Hoffa v. United States,* 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374 (1966); *United States v. Smith,* 802 F.2d 1119, 1124 (9th Cir.1986). They were entitled to wait until tests on the drugs seized from Klein proved conclusively that Linn should be arrested and his automobile seized. The DEA learned this fact on the morning of December 10, by about 9:00 a.m. *See United States v. Klein,* 860 F.2d 1489, 1491 (9th Cir.1988). At 10:00 a.m., Linn left Seattle, heading north toward Canada.

The agents' failure to seek a warrant was not unreasonable. Linn's mobility reinforced the agents' need to act quickly. This forfeiture seizure is technically not a *Ross* "automobile exception" case, because there was no probable cause to search for contraband (although the automobile was, in essence, *itself* the "contraband"). *See Spetz,* 721 F.2d at 1471. However, the "mobility" underpinning of the automobile exception is, of course, closely related to our "exigent circumstances" analysis, and is the compelling factor. *Id.; see Carroll v. United States,* 267 U.S. 132, 150–53, 45 S.Ct. 280, 284–85, 69 L.Ed. 543 (1925) (mobility of automobile as exigent circumstance).

## II

Appellant claims that insufficient evidence was introduced to support his conviction on count II, unlawful use of a communication facility (here, a telephone) in violation of 21 U.S.C. § 843(b).

### A

First, appellant argues that the timing of the 6:29 p.m. telephone call from Adler's room to appellant's hotel, in combination with DEA-recorded times at which appellant was seen outside his room, makes it "impossible" for appellant to have been *in* his room at the time of the call. Appellant further claims that this evidence was insufficient absent documentation of the call's contents. We review the record as a whole, in the light most favorable to the government, when evaluating this claim. *United States v. Normandeau,* 800 F.2d 953, 958 (9th Cir.1986). The narrow inquiry is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Normandeau,* 800 F.2d at 959 (emphasis in original). If so, we must affirm.

"In order to prove a violation of 21 U.S.C. § 843(b), the government must establish knowing and intentional use of a communications facility, e.g., a telephone, to facilitate the commission of [the] narcotics offense." *United States v. Phillips,* 664 F.2d 971, 1032 (5th Cir.1981); *see also United States v. Rey,* 641 F.2d 222, 224 n. 6 (5th Cir.1981).

 Appellant argues that his use of a telephone did not "facilitate" the conspiracy to distribute. "Facilitation" is established by showing that use of a communications facility (e.g., a telephone) made easier or less difficult, or assisted or aided, the narcotics offense. *Phillips,* 664 F.2d at 1032; *United States v. Watson,* 594 F.2d 1330, 1343 (10th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979).

 We conclude that the timing discrepancy is not material and that the call's contents can be proven by circumstantial

evidence (e.g. surveillance leading up to and following the call). We observe, as we did in *United States v. Adler*, 862 F.2d 210, 215 (9th Cir.1988), that the DEA-recorded times were approximate. In addition, we note that the most obvious explanation for a disparity of less than two minutes between the time appellant was observed (by DEA agents) entering his room and the time the telephone call was made (Sheraton time) is that the Sheraton and DEA timepieces were not synchronized. Finally, the inference that Adler's call was in fact received by appellant, and served a facilitating purpose, is supported by the close surveillance of appellant after this telephone call. At 6:25 p.m., appellant did not know where Adler was located or when he was arriving. Yet at 6:35 p.m., following the 6:29 p.m. telephone call from Adler, appellant exited his hotel and immediately walked to the meeting with Adler. A rational trier of fact might have inferred that the telephone call from Linn's hotel room to the Vance Hotel was received and served the purpose of informing appellant that the narcotics transaction was set, that Adler was ready to undertake an exchange of narcotics for cash, and that Adler was located at the Sheraton Hotel. The foregoing facts sufficiently establish facilitation under 21 U.S.C. § 843(b).

### B

■■■ Second, appellant objects to admission into evidence of a computer printout which recorded the 6:29 p.m. telephone call from Adler's room to appellant's hotel. Appellant claims that the printout is inadmissible under the business records exception to the hearsay rule, Fed.R.Evid. 803(6), since the printout is "an untrustworthy record generated by a computer."

Fed.R.Evid. 803(6) requires, as foundation for admissibility, that the excepted writing be made by a person with *personal knowledge* at or near the time of the recording, and that the record be kept *in the ordinary course of business.*

Appellant argues that, since the Sheraton's Director of Communications, Ms. Fry, "did not understand the distinctions between 'menus', 'data bases', and computer 'code', she was 'confused and inadequately trained,'" and thus without personal knowledge of the way in which the computer printout was generated. This argument is frivolous. The record was generated automatically, as the trial transcript demonstrates, and was retained in the ordinary course of business, as records of outgoing telephone calls regularly are. Fry was a "qualified witness," even though she was not a computer programmer. *See United States v. Miller*, 771 F.2d 1219, 1237 (9th Cir.1985); *see also United States v. Young Bros., Inc.*, 728 F.2d 682, 694 (5th Cir.), *cert. denied*, 469 U.S. 881, 105 S.Ct. 246, 83 L.Ed.2d 184 (1984). In any event, telephone records are business records for the purposes of Fed.R.Evid. 803(6). *See, e.g., United States v. Vela*, 673 F.2d 86, 89–90 (5th Cir.1982).

Since this court has given district courts broad discretion to decide whether a particular record is trustworthy, *United States v. Licavoli*, 604 F.2d 613, 622–23 (9th Cir.), *cert. denied*, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980), and appellant does not demonstrate untrustworthiness, we conclude that the record ("Exhibit 15") was properly admitted under Fed.R.Evid. 803(6).

### III

■■■ Appellant claims that the decision not to bifurcate the forfeiture issue from a determination of guilt or innocence amounts to reversible error. We disagree.

We have not announced a standard of review on this question or established the burden a defendant must bear. In this case, appellant did not object at trial to joining the forfeiture and guilt determinations. While broached at pretrial conference, no rationale for bifurcation was ever offered by appellant.

Through analogy to the standard of review and burdens which attach for severance, *see United States v. Nolan*, 700 F.2d 479, 483 (9th Cir.), *cert. denied*, 462 U.S. 1123, 103 S.Ct. 3095, 77 L.Ed.2d 1354 (1983); *United States v. Armstrong*, 621

F.2d 951, 954 (9th Cir.1980); *see also, United States v. Jenkins,* 785 F.2d 1387, 1393–94 (9th Cir.), *cert. denied,* 479 U.S. 855, 107 S.Ct. 192, 93 L.Ed.2d 125 (1986); *United States v. Vigil,* 561 F.2d 1316, 1317 (9th Cir.1977), we conclude that failure to bifurcate the forfeiture and guilt determinations was not an abuse of discretion. As a threshold matter, appellant did not make any showing of manifest error, a prerequisite for severance. *United States v. Adams,* 581 F.2d 193, 198 (9th Cir.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978); *cf. United States v. Sandini,* 816 F.2d 869 (3d Cir.1987) (dicta describing "serious doubts about the practice of consolidating the guilt and forfeiture matters for trial"). On these facts, we need not address this question in any greater depth.

### IV

Appellant argues that the mandatory minimum sentencing provisions of 21 U.S.C. § 841(b)(1)(B), as amended by the Anti–Drug Abuse Act of 1986, are unconstitutional. Appellant "adopts by reference" the "opening and reply briefs of codefendant Leo Klein."

■ This court has decided that the sentencing provisions in 21 U.S.C. § 841(b)(1)(B) are constitutional. This decision was reached in *United States v. Savinovich,* 845 F.2d 834 (9th Cir.1988), and further explained in *Klein,* 860 F.2d 1489. Appellant's sentence was not unconstitutional in view of the statute's clear language, the gravity of the crime, the sentences imposed on other criminals in the same jurisdiction, and the sentences imposed for commission of the same crime in other jurisdictions. *See Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). There was no violation of due process, equal protection, or the separation of powers doctrine. *See United States v. Holmes,* 838 F.2d 1175 (11th Cir.1988); *Adler,* 862 F.2d 210. Appellant could have received a forty-year sentence under the statute. He received a ten-year sentence. There is no constitutional violation.

### V

Appellant argues that his trial and that of codefendant Robert Adler should have been severed.

■ Appellant "adopts by reference" the arguments of codefendant Adler. These arguments are fully addressed in *Adler,* 862 F.2d 210. Since manifest prejudice must be proved to warrant severance, *United States v. Brashier,* 548 F.2d 1315, 1324 (9th Cir.1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977); *Adams,* 581 F.2d at 198, and it was not proved by either defendant, severance was not warranted. Moreover, appellant received a favorable ruling on his *in limine* motion, barring comment by codefendant Adler or the government on his use of an alias. Both the government and Adler complied with this proscription at trial. The coconspirators' theories of defense were not mutually exclusive. Thus, the judge did not abuse her discretion in denying appellant's motion to sever.

### VI

Appellant argues that the district court erred in refusing instructions on (1) alleged lesser-included offenses of conspiracy to distribute, and distribution, of cocaine in an amount less than 500 grams, and (2) multiple conspiracies.

This court reviews denial of lesser-included offense instructions for an abuse of discretion. *United States v. Wagner,* 834 F.2d 1474, 1487 (9th Cir.1987); *United States v. Steel,* 759 F.2d 706, 711 (9th Cir. 1985). Discretion in formulating jury instructions generally lies with the district court. *United States v. Pace,* 833 F.2d 1307, 1314 (9th Cir.1987). "So long as the instructions fairly and adequately cover the issues presented, the judge's formulation of those instructions ... is a matter of discretion." *United States v. Echeverry,* 759 F.2d 1451, 1455 (9th Cir.1985). Entitlement to an instruction on lesser-included offenses, or multiple conspiracies, exists only if the theory is "supported by law and has some foundation in the evidence." *Id.*

■ Entitlement to a lesser-included offense instruction turns on completion of a two-step process. "First, the defendant must identify the lesser-included offense. Second, the defendant must demonstrate that a rational jury could find the defendant guilty of the lesser included offense but not the greater." *Pace*, 833 F.2d at 1314; *see also United States v. Brown*, 761 F.2d 1272, 1277 (9th Cir.1985).

■ Evidence against appellant amply supports the conclusion that he participated in the conspiracy to distribute and in the distribution of cocaine in excess of 500 grams. Appellant's alleged "personal use purchase" of cocaine is unsupported by the evidence. Moreover, it is immaterial. The following facts are clear. Appellant was observed making withdrawals from Canadian banks. Checks recovered from Adler's possession were drawn on Vancouver banks by appellant. Appellant met with Adler (the narcotic source) and immediately thereafter with Klein (the narcotics courier). Appellant travelled with one brown briefcase to the banks, to meet Adler, and to meet Klein. Klein was arrested with two one-kilogram bricks of cocaine. Adler was arrested with substantial amounts of cash, as well as the checks drawn on banks visited by appellant. Appellant and Klein undertook suspicious activities inside Klein's vehicle. Duct tape from the cocaine packages carried by Klein matched the rolls of tape carried by appellant. Appellant drove from Vancouver to Seattle and attempted to return to Canada shortly thereafter. Together, these facts indicate appellant's participation in the conspiracy to distribute and distribution of cocaine in excess of 500 grams. A rational jury could not have convicted appellant of any lesser-included offense without relying on the precise evidence which establishes guilt of the offenses charged.

Appellant's effort to construct inferences unsupported by the record is not persuasive. The jury heard no evidence upon which it might reasonably have concluded that Adler and Klein met separately (i.e. without appellant), that appellant delivered a smaller quantity of cocaine from Adler to Klein but did not deliver the *larger* quantity, or that the matching tape ends were coincidental.

■ Appellant's claim, after our review of the circumstantial evidence, that two conspiracies were undertaken—one with him, involving less than 500 grams of cocaine, and a second with another individual, involving more than 1.5 kilograms of cocaine—is simply untenable.

Since an instruction on multiple conspiracies is unnecessary in the absence of evidence rationally supporting a verdict at variance with the conspiracy charge, *see United States v. Zemek*, 634 F.2d 1159, 1168–69 (9th Cir.1980); *United States v. Kearney*, 560 F.2d 1358, 1363 (9th Cir. 1977), and the record reveals no such evidence, we decline to reverse on this claim.

## CONCLUSION

The district court's denial of the motion to suppress was not erroneous. The evidence seized from appellant's automobile was properly admitted. Sufficient evidence exists to support appellant's conviction on count II (unlawful use of a communication facility) including a Sheraton computer record of a telephone call from Adler's room to appellant's hotel. No manifest prejudice was shown as a result of failure to bifurcate the forfeiture and guilt determinations. No abuse of discretion resulted from denial of a motion to bifurcate the issues in this case. The mandatory minimum sentencing provisions of 21 U.S.C. § 841(b)(1)(B) are constitutional. Finally, severance was not necessary, and the jury instructions were fair, adequate, and not erroneous.

AFFIRMED.